UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MUHIN AHMED, and MST MAISHA ANY,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY JOHN BLINKEN, ALEJANDRO MAYORKAS, and NATHAN FLOOK,<br><br>    Defendants. | Case No. 23-11860<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [4]**

Muhin Ahmed is a permanent resident of the United States living in Detroit, Michigan. (ECF No. 1, PageID.4.) Ahmed's wife Mst Maisha Any is a Bengali national residing in Bangladesh. (*Id.*) Ahmed and Any hoped to start a family together in the United States, so Ahmed filed a Relative Alien Petition for Any on February 3, 2017. (*Id.* at PageID.5–6.) Any's visa application was approved by the United States Citizenship and Immigration Services agency in December 2018 and a visa became available to her in April 2019. (*Id.* at PageID.5.) Over four years passed without the State Department scheduling an immigrant visa interview for Any at the United States Embassy in Bangladesh—the necessary next step in the visa application process. (*Id.*)

So Ahmed and Any filed this suit against the Unites States Secretary of State, the United States Secretary of Homeland Security, and the Counsel General of the

United States Embassy in Dhaka, Bangladesh. (*Id.* at PageID.4.) Plaintiffs seek a ruling that Defendants have unreasonably delayed adjudication of the visa application in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), and a writ of mandamus compelling Defendants to act on the application. (*Id.* at PageID.6–7.)

Before the Court is Defendants' motion to dismiss all claims for failure to state a claim and lack of jurisdiction. (ECF No. 4.) The motion is fully briefed (*see* ECF Nos. 4, 6, 7) and does not require further argument, *see* E.D. Mich. LR 7.1(f). For the reasons that follow, the Court GRANTS Defendants' motion.

## I.

Before addressing Plaintiffs' specific allegations, some background information is helpful.

Generally, a foreign national wishing to enter the United States must first obtain a visa from the Department of State. A visa is "a travel document that allows its holder to travel to a port of entry and request permission to enter the United States, but it does not guarantee the right to enter the country." *Gomez v. Trump*, 485 F. Supp.3d 145, 158 (D.D.C.), *amended in part on other grounds*, 486 F. Supp.3d 445 (D.D.C. 2020), *and amended in part sub nom. Gomez v. Biden*, No. 20-01419, 2021 WL 1037866 (D.D.C. Feb. 19, 2021); s*ee also* 8 U.S.C. § 1201(h). Congress created three types of immigrant visas: (1) family based; (2) employment based; and (3) diversity based. *See* 8 U.S.C. § 1153. This case concerns a family-based visa.

2

To obtain a family-based immigrant visa, a United States citizen or lawful permanent resident must first file a Form I-130 Petition for Alien Relative with USCIS to classify the intended beneficiary under one of the family-based categories established by the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1153(a)(1)–(4), 1154(a)(1)(A)(i). If USCIS approves the petition, the agency forwards a copy to the Department of State, which is responsible for adjudicating applications for immigrant visas at United States embassies and consulates overseas. *See* 8 U.S.C. §§ 1154(b), 1201, 1202.

The State Department's National Visa Center then initiates the process of collecting the fees and documents necessary before an immigrant visa application may be made. *See* 8 C.F.R. § 204.2(g)(3). After the NVC receives the necessary documentation and fees, the case is considered "documentarily complete" and the NVC works with the appropriate embassy or consulate to schedule an immigrant visa interview for the applicant. *See Immigrant Visa Process*, Step 9, U.S. Dep't of State, https://perma.cc/3ZLC-R2CZ. The embassy or consulate tells the NVC what their daily interviewing capacity is, and the NVC fills these appointments in a first-in, first-out manner. *Id.* After the interview, the consular officer is then required to issue or refuse the visa. *See* 22 C.F.R. § 42.81(a). No specific timeframes are mandated for the completion of these steps.

Applying this framework to the facts alleged in this case, Ahmed filed a Petition for Alien Relative form for Any on February 3, 2017. (ECF No. 1, PageID.4.) Any's visa application was approved by USCIS on December 7, 2018. (*Id.* at

3

PageID.5.) The visa application was then forwarded to the Department of State and processed by the NVC. (*Id.*) Plaintiffs say "an immigrant visa became available to Any in April 2019." (*Id.* (citing *The Visa Bulletin*, U.S. Dep't of State, https://perma.cc/2WAE-JHQJ).) On September 19, 2019, NVC notified Plaintiffs that the application was documentarily complete and ready for interview. (ECF No. 6, PageID.55.) Despite Plaintiffs' repeated inquiries, the Department has failed to take any action to arrange a visa interview for Any. (ECF No. 1, PageID.5.) Without an interview, Any's visa application essentially remains in limbo.

Claiming unreasonable delay under the APA, Plaintiffs now seek Court intervention in the form of a writ of mandamus to compel the Defendants to adjudicate Any's visa application. (*Id.* at PageID.6–7.) Plaintiffs say that the Defendants' "delay has caused [them] to be separated from each other for over 4 years. During this time, [they have] been unable to live as a married couple or start a family life together." (*Id.* at PageID.6.) And, say Plaintiffs, the "failure to adjudicate [Any's] immigrant visa has contributed to emotional stress for the Plaintiffs." (*Id.*)

Defendants moved to dismiss the APA claim under Federal Rule of Civil Procedure 12(b)(6) and the mandamus request under Rule 12(b)(1). The Court analyzes each claim in turn.

## II.

First, the standard. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "construes the complaint in the light most favorable" to the Plaintiffs and determines whether their "complaint 'contain[s] sufficient factual

4

matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter." A motion to dismiss under Rule 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack, as here, tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721 F. App'x 462, 465 (6th Cir. 2018).

### III. APA Claim

The APA requires each administrative agency to "proceed to conclude a matter presented to it" within a "reasonable time," 5 U.S.C. § 555(b), and permits reviewing courts to compel agency action that has been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). To be entitled to relief under the APA, a plaintiff must show either that the agency unlawfully withheld action it was required to take, such as when an agency fails to meet a congressionally set deadline, or that the agency unreasonably delayed taking "a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

To evaluate whether agency delay is unreasonable, the Sixth Circuit applies the six-factor test articulated by the D.C. Circuit in *Telecommunications Research & Action Center* (*TRAC*) *v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). *See Barrios Garcia v. U.S.*

5

*Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022). The six *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks omitted).

These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. C.A.B.*, 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1100 (D.C. Cir. 2003). Rather, reasonableness "depend[s] in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.*

**A. Application of *TRAC* factors at the Motion to Dismiss Stage**

The Court begins by addressing Plaintiffs' threshold argument that the application of the *TRAC* factors is inappropriate at the motion to dismiss stage of the litigation. (ECF No. 6, PageID.58.)

Plaintiffs are correct that courts, including the Sixth Circuit, have cautioned that claims of unreasonable delay are not well-suited for the motion to dismiss stage given the fact specific nature of the inquiry. *See Barrios Garcia,* 25 F.4th at 451 ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." (quoting *Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021))). And indeed, some courts have declined to apply the *TRAC* factors at the motion to dismiss stage. *See, e.g.*, *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("Undergoing such a fact-specific inquiry at this stage would be premature."); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008) ("While the court has jurisdiction over USCIS, the determination of whether an agency's delay is unreasonable is a fact specific inquiry that is premature at this stage of the proceedings."); *Mashpee*, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."); *Escalona v. U.S. Dep't of Homeland Sec.,* No. 20-613, 2021 WL 5546710, at *5 (W.D. Mich. Aug. 23, 2021) ("The Court anticipates that some discovery may be required to fully vet the considerations the *TRAC* factors raise before summary judgment motions are filed.").

Other courts, however, including courts in this district, have concluded the opposite. *See, e.g.*, *Mottahedan v. Oudkirk*, No. 23-3486, 2024 WL 124750, at *3 (D.D.C. Jan. 11, 2024) ("[T]he majority of authority demonstrates that it is appropriate to apply the *TRAC* factors at the motion to dismiss stage."); *Desai v. USCIS*, No. 20-1005, 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (listing visa adjudication cases that have found "enough facts to evaluate the *TRAC* factors now"); *Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 WL 2806948, at *4 (E.D. Mich. May 31, 2024) (applying the *TRAC* factors to a motion to dismiss an unreasonable delay claim pertaining to immigrant visa adjudication); *Telukunta v. Mayorkas*, No. 21-10372, 2021 WL 2434128, at *3 (E.D. Mich. June 15, 2021) (same). "Notably, however, in undertaking this analysis at the motion to dismiss stage, the court is 'not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Yafai,* 2024 WL 2806948, at *4 (citation omitted). And, importantly, the Sixth Circuit applied the *TRAC* factors on a motion to dismiss in *Barrios Garcia*. Accordingly, the Court will do so here.

### B. *TRAC* Factors

Many courts consider the first *TRAC* factor—that the time agencies take to make decisions must be governed by a rule of reason—to be the most important. *See, e.g.*, *Telukunta,* 2021 WL 2434128, at *2 ("The most important *TRAC* factor is the first factor." (citing *Muminov v. Sessions*, No. 118-1034, 2018 WL 5298386, at *4 (N.D. Ohio Oct. 25, 2018))). "The inquiry centers on 'whether the agency's response

8

time . . . is governed by an identifiable rationale.'" *Ebrahimi v. Bitter*, No. 22-00788, 2023 WL 3853935, at *5 (M.D. Tenn. June 6, 2023) (quoting *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). The second factor, whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed," may supply content for the agency's rule of reason. *TRAC*, 750 F.2d at 80. The first and second factors are typically considered together. *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021).

The first factor "weighs heavily in favor of [Defendants] because the State Department employs a 'first-in, first-out' methodology for processing visa applications, and courts have uniformly concluded that this methodology satisfies the rule of reason." *Ebrahimi* 2023 WL 3853935, at *5 (citing *Telukunta*, 2021 WL 2434128, at *2; *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021); *Muvvala v. Wolf*, No. 20-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020)). As for the second factor, there is no statutory or regulatory timeframe within which the State Department is required to adjudicate immigrant visa applications. Instead, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017); *cf. Ebrahimi,* 2023 WL 3853935, at *5 (noting that the second factor was neutral because "Congress has provided no statutory timeframe indicating how quickly it requires the State Department to process visa applications").

Plaintiffs say that because defendants have not scheduled an interview and have provided no time frame for when an interview or decision would be made, the

9

over four-year delay is objectively unreasonable. (*See* ECF No. 6, PageID.61.) Plaintiffs' argument could generously be interpreted in two ways—first, that the length of delay alone is objectively unreasonable, and second, that the length of the delay indicates Defendants are not applying a rule of reason.

As to the first, the Supreme Court has cautioned that the passage of time alone cannot establish unreasonable delay under the APA. *See INS v. Miranda*, 459 U.S. 14, 18 (1982); *Muminov*, 2018 WL 5298386, at *4 ("Delay alone, without other circumstances of unreasonableness," is not sufficient to establish unreasonable delay.).

As to the second, Plaintiffs make no allegations in their complaint suggesting that the first-in, first-out rule is not being applied to the adjudication of Any's application. This distinguishes the case from *Barrios Garcia*, in which the Sixth Circuit found that the plaintiffs had adequately alleged that "no rule of reason governs the U-visa adjudication process" where they alleged that "many U-visa applications were filed after but decided before theirs," which showed that "USCIS does not make U-status waiting list decisions on a first in, first out basis." 25 F.4th at 453. Indeed, Plaintiffs make no factual allegations whatsoever that the delay in scheduling Any's immigrant visa interview was unique to Any or motivated by anything particular to Any. *See Abdullaeva v. Garland*, No. 23-741, 2023 WL 7221935, at *5 (N.D. Ohio Nov. 2, 2023) ("The Court also notes that Plaintiff alleges nothing peculiar to her that she claims is motivating a delay. There is no allegation of arbitrary or capricious treatment. Lacking such allegations, there is no plausible

10

basis for this Court to hold that unique circumstances or facts particular to Plaintiff's situation render the time taken to resolve her application an unreasonable delay.").

Nonetheless, "courts often look to the length of delay as a rough yardstick to determine whether the first-in, first-out rule is actually being applied." *Ebrahimi,* 2023 WL 3853935, at *6. In considering the first two factors, courts have "generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (citation omitted); *see also Mirbaha v. Pompeo,* 513 F. Supp. 3d 179, 185 (D.D.C. 2021) (noting the same in the context of K-1 fiancée visas); *Yafai,* 2024 WL 2806948, at *5 (same, in the context of delay associated with I-130 petition and form DS-5535).

Here, Any's visa application became documentarily complete, and thus ready for an interview, in September 2019—around four years before Plaintiffs filed this suit in August 2023. Thus, the delay in scheduling her visa interview falls within the three-to-five-year period which courts have often found reasonable in the immigration context.

The first two factors favor Defendants for another reason, the rational basis for the delay. In March 2020, just five moths after Any's visa became documentarily complete, "the State Department temporarily suspended visa services at all U.S. embassies and consulates, including the embassy in [Bangladesh], due to the onset of the COVID-19 pandemic." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 (D.D.C. 2022) (citation omitted). "Despite efforts to resume pre-pandemic processing capabilities,

11

many embassies and consulates face substantial backlog of immigrant visa applications." *Id.* (citation omitted). This backlog has caused increased wait times for individual applicants awaiting an appointment date for visa interviews. *Id.* According to the State Department's website[1], the U.S. Embassy in Dhaka, Bangladesh, much like other embassies around the world, is experiencing substantial pandemic-related backlog in every visa category, resulting in significant delays in the scheduling of consular interviews. *See Immigrant Visas*, U.S. EMBASSY IN BANGLADESH, https://perma.cc/2CSC-84SM; *see also Immigrant Visa Interview-Ready Backlog Report*, U.S. Dep't of State, https://perma.cc/2XC9-JQB2.

And although the State Department "authorized a phased resumption of visa services in July 2020, the Department gave broad discretion to embassies and consulates to determine how to prioritize visa appointments as safely as possible in all visa categories." *See Arab*, 600 F. Supp. 3d 59, at 70. "Given this backlog and . . . public health considerations impacting consular staff operations, the first two *TRAC* factors tilt decisively in defendants' favor." *Id.*; *Rahimian v. Blinken*, No. 22-785, 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (same); *see, e.g., Dastagir v.*

---

[1] The Court may take judicial notice of information posted on official public websites of government agencies. *Nikolao v. Lyon*, 238 F. Supp. 3d 964, 977 (E.D. Mich.) ("Without converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment under Rule 56, a court can take judicial notice of public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies." (internal alterations, quotation marks, and citations omitted)), *aff'd in part, vacated in part on other grounds,* 875 F.3d 310 (6th Cir. 2017).

*Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) ("Issues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess."); *see also Murway v. Blinken*, No. 21-1618, 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (noting that "operational delays due to the COVID-19 pandemic favor the Government on the first two factors"); *Poursohi v. Blinken,* No. 21-01960, 2021 WL 5331446, at *7 (N.D. Cal. Nov. 16, 2021) (concluding that delay in scheduling visa interview was not unreasonable "[g]iven the unprecedent[ed] disruptions to DOS's visa processing capability caused by COVID-19—which has adversely impacted the processing times of all immigrant visa applicants"). So the Court finds the first two factors favor Defendants here.

Another factor also weighs in the Defendants' favor—the fourth factor, which considers "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80. Courts routinely find this factor strongly favors the government when "'a judicial order putting' a plaintiff's application 'at the head of the queue' would 'move [ ] all others back one space and produce[ ] no net gain.'" *Yafai*, 2024 WL 2806948, at *5 (alterations in original) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Mashpee*, 336 F.3d at 1100 (reiterating "the importance of 'competing priorities'" and noting the D.C. Circuit has "refused to grant relief [where the fourth factor favored the government], even though all the other [*TRAC*] factors" favored plaintiff).

13

Here, Plaintiffs ask the Court to move Any's application to the front of the line. They do not allege that Defendants have treated Any differently than any other visa applicants facing similar circumstances. Nor do Plaintiffs allege that similarly situated visa applicants have been moved ahead of her for any reason whatsoever. Nor do they allege that moving Any up would not impact any other applicants who may have been waiting longer. Thus, this is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu*, 544 F. Supp. 3d at 13 (quoting *Skalka*, 246 F. Supp. 3d at 154). And courts have consistently rejected similar requests to reorder the government's competing priorities. *See, e.g.*, *Dastagir*, 557 F. Supp. 3d at 167 ("An order requiring adjudication of her visa application necessarily reshuffles the queue of other applicants also waiting for adjudication of their cases. Dastagir offers no reason why she should have 'super-priority' over them."); *Palakuru*, 521 F. Supp. 3d at 52 (D.D.C. 2021) ("Were the Court to compel the Government to act on Palakuru's petition, it would simply move him to 'the head of the queue' because he sued."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief."); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) ("[D]elays stemming from resource-allocation decisions simply do not lend themselves to 'judicial "reordering[s] [of] agency priorities".'"); *see also Rahimian*, 2023 WL 143644, at *8 ("D.C. Circuit precedent recognizes 'no basis for reordering agency priorities' when an 'agency is in a unique—and authoritative—position to allocate its

resources in the optimal way.'" (citation omitted)). As a result, the fourth factor weighs in Defendants' favor.

On the flip side, the third and fifth *TRAC* factors favor Plaintiffs.

These "both consider the effects of delay." *Milligan*, 502 F. Supp. 3d at 319. The third factor considers whether "human health and welfare are at stake." *TRAC*, 750 F.2d at 80. And the fifth factor considers "the nature and extent of the interests prejudiced by delay." *Id.*

Courts find that these factors weigh in favor of plaintiffs when delays in visa processing force plaintiffs to postpone their lives together as married or engaged couples. *See, e.g.*, *Bagherian v. Pompeo,* 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("The Court does not take lightly Abbasi and her fiancé's interest in marrying and living together in the United States, and it reminds the government that it must treat Abbasi's case with 'the sense of urgency one would expect when familial interests are at stake.'"); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 22 (D.D.C. 2022) (finding third and fifth factors decisively favor plaintiffs where visa processing delay prevents married couples from living together and starting life together); *Didban*, 435 F.Supp.3d at 177 (same) ; *Yafai*, 2024 WL 2806948, at *5 (same).

So too here. Plaintiffs' complaint alleges that they have endured significant "emotional stress" and have been prevented from starting their life together as a married couple due to the delay. (*See* ECF No. 1, PageID.24.) Indeed, Plaintiffs have been apart for more than four years—almost five as of the date of this order. They have been unable to live together, have children, or build a home and life together in

15

the United States. The third and fifth factors favor Plaintiffs. Nonetheless, "these [two] factors do not [necessarily] carry the day." *Yafai*, 2024 WL 2806948, at *5 (citation and quotation marks omitted); *see also Giliana*, 596 F. Supp. 3d at 22 ("No doubt, Giliana and Shamon have suffered from this delay in 'build[ing] their lives together.' But these factors do not carry the day.").

Finally, the sixth *TRAC* factor—that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," 750 F.2d at 80—is inapplicable or neutral here as Plaintiffs do not allege any impropriety or bad faith on the part of Defendants.

In sum, factors one, two, and four, favor Defendants, factors three and five favor Plaintiffs, and factor six is inapplicable or neutral. After carefully weighing the relevant considerations, the Court concludes that, at this time, Plaintiffs have failed to establish that the over four-year delay in processing Any's visa application is unreasonable under the APA. The Court recognizes that the delay is substantial and imposes hardship on Plaintiffs, and it encourages the Government to act on the application as soon as possible—especially since the delay is now starting to approach the time that Courts do find it to be unreasonable. However, the Plaintiffs' difficulties are insufficient to overcome the compelling governmental interest in allowing the agency to balance its competing priorities as it sees fit, particularly in light of the COVID-19 backlog and the lack of any allegation that the agency is not following a rule or reason as it pertains to Any's visa's application.

16

Accordingly, the Court finds that the Plaintiffs have failed to state a claim for unreasonable delay under the APA and it dismisses that claim.

### IV. Mandamus Act

That leaves Plaintiffs' mandamus claim. The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). To be entitled to a writ of mandamus a plaintiff must establish that "(1) he has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available." *See Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011).

Plaintiffs seek the same remedy under both the APA and the Mandamus Act—namely, to compel agency action on Any's visa application. But "[w]hen a complaint seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze [the] APA claim only." *Taherian v. Blinken*, No. 23-01927, 2024 WL 1652625, at *3 (C.D. Cal. Jan. 16, 2024) (quoting *Akbar v. Blinken*, No. 23-1054, 2023 WL 8722119, at *3 (S.D. Cal. Dec. 18, 2023)) (citing *Vaz v. Neal*, 33 F. 4th 1131, 1135 (9th Cir. 2022)); *see also Telukunta*, 2021 WL 2434128, at *4 (dismissing mandamus petition for lack of jurisdiction where plaintiff "has an adequate remedy under the APA if she could establish an unreasonable delay, but she cannot."); *Yafai,* 2024 WL

17

2806948, at *2 (dismissing mandamus claim "where relief sought under these two counts is the same").

Accordingly, as Plaintiffs have an adequate remedy under the APA if they could establish unreasonable delay and seek the same relief under the APA and Mandamus Act claims, the Court will dismiss the mandamus claim for lack of jurisdiction.

V.

The Court is not unsympathetic to Plaintiffs' plight—indeed, Defendants' delay of almost five years approaches the upper limit of what courts have found reasonable. But as currently pled, Plaintiffs' complaint fails to plausibly allege unreasonable delay under the APA. Accordingly, Defendants' motion to dismiss (ECF No. 4) is GRANTED. The Court dismisses Plaintiffs' complaint WITHOUT PREJUDICE to refiling in the future. A separate judgment will follow.

SO ORDERED.

Dated: September 12, 2024

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE